UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ALICE SAMANIEGO SMITH, | ) | No. ED CV 10-00805-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.  The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner.  The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1.   Whether  the Administrative Law Judge ("ALJ") properly

considered the treating physician's opinion; and

2.   Whether the ALJ properly considered the law witness testimony.

(AR at 2.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.  After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

**I**

**THE ALJ DID NOT PROPERLY CONSIDER THE OPINION**

**OF TREATING PSYCHIATRIST DR. UMAKANTHAN**

In his Decision (AR 9-16), the ALJ determined that one of Plaintiff's severe impairments is depression, but that she does not meet or equal a Listing as defined in 20 C.F.R. Part 404, subpart P, Appendix 1. (AR 11.)  The ALJ noted that Dr. Umakanthan completed a "check-off form" in November 2008 which indicated mental functional limitations ranging from moderate to extreme. (AR 14, citing AR 408-409.)  This opinion was rejected because it was found to be "entirely conclusory and without basis or support in the record." (AR 14.) Instead, the ALJ found that the opinion of the psychiatric consultative examiner was "credible." (Id.) (See Complete Psychiatric Evaluation of Dr. Yang, dated January 18, 2006, at AR 185-189.)

Plaintiff frames her first issue as a challenge to the ALJ's rejection of Dr. Umakanthan's check-off form, asserting that, contrary to the ALJ's conclusion, the report is not conclusory, but is based on and consistent with numerous prior treatment notes.  For the reasons

to be discussed the Court agrees with Plaintiff's contention.

**A.    Applicable Law**.

The Ninth Circuit has repeatedly reaffirmed the principle that greatest weight is ordinarily given to the opinions of treating physicians versus those physicians who do not treat:

> "We afford greater weight to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).

Even so, the treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. Id., citing Rodriquez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989)  The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted, Id., citing Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). However, if the ALJ chooses to do so, the ALJ must '"'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"' Id., citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987), quoting Sprague, 812 F.2d at 1230; see also Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).

This clearly articulated rule, set forth by the Circuit in its opinions in Magallanes and Cotton, has been often cited in later decisions. (See, Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995): "The ALJ may reject the opinion only if she provides clear and

1  convincing reasons that are supported by the record as a whole.";

2  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995): "Even if the

3  treating doctor's opinion is contradicted by another doctor, the

4  Commissioner may not reject this opinion without providing 'specific

5  and legitimate reasons' supported by substantial evidence in the

6  record for so doing." (Citation omitted).

7      In those cases where the opinion of the treating physician

8  conflicts with that of an examining physician, such as occurred in

9  this case, the Ninth Circuit has held that the ALJ can resolve the

10 differences between these opinions by setting out a detailed and

11 thorough summary of the facts and conflicting clinical evidence,

12 stating his interpretation, and making findings. Magallanes, 881 F.2d

13 at 751, citing Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986).

14     Also instructive is the Ninth Circuit's discussion of this issue

15 in Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995):

16         "Where the opinion of the claimant's treating physician

17     is contradicted, and the opinion of a nontreating source is

18     based on independent clinical findings that differ from

19     those of the treating physician, the opinion of the

20     nontreating source may itself be substantial evidence; it is

21     then solely the province of the ALJ to resolve the conflict.

22     Magallanes, 881 F.2d at 751.  Where, on the other hand, a

23     nontreating source's opinion contradicts that of the

24     treating physician but is not based on independent clinical

25     findings, or rests on clinical findings also considered by

26     the treating physician, the opinion of the treating

27     physician may be rejected only in the ALJ gives specific,

28     legitimate reasons for doing so that are based on

1  substantial evidence in the record. Id. at 751, 755.  See

2  Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir. 1993)

3  (applying test where ALJ relied on contradictory opinion of

4  nonexamining medical advisor).”

5  (53 F.3d at 1041.)

6

7      With regard to “check-off” forms, they are disfavored when they

8  are unsupported by objective findings.  See Crane v. Shalala, 76 F.3d

9  251, 253 (9th Cir. 1996), citing Murray v. Heckler, 722 F.2d 499, 501

10 (9th Cir. 1983).  See also Magallanes v. Bowen, 881 F.2d 747, 751 (9th

11 Cir. 1989).

12

13     **B.   Analysis**.

14     The Court’s task here is to determine whether, in fact, Dr.

15 Umakanthan’s check-off form is without any basis or support in the

16 record, as the ALJ concluded.[1]

17     The importance of functional evaluation in mental health cases is

18 underscored   in   20   C.F.R.   §404.1520(a)(C)(3)(4)   and

19 §416.920(a)(C)(3)(4), which mandate that consideration be given, among

20 other  things,  to  activities  of  daily  living  (“ADLs”);  social

21 functioning;  concentration,  persistence  or  pace;  and  episodes  of

22 decompensation.   The  revised  regulations,  embodied  in  20  C.F.R.

23 §404.1520(a)(E)(2)  and  §416.920(a)(E)(2)  identify  five  discrete

24 categories  for  the  first  three  of  four  relevant  functional  areas:

25 activities  of  daily  living,  social  functioning,  concentration,

26 persistence or pace, and episodes of decompensation.  These categories

27 _____

28     [1]   By definition, check-off forms are conclusory, and therefore
the question is whether they are backed up by objective evidence.

are None, Mild, Moderate, Marked, and Extreme.  These evaluations are important in the Step Two and Step Three sequential evaluation process to determine whether a claimant has a severe mental impairment, and if so, whether it meets or equals any of the Listings.  Consequently, Dr. Umakanthan's check-off form conclusions are relevant in the sequential evaluation process.

In the JS, Plaintiff has summarized numerous treatment records which, she argues, are relevant to and supportive of Dr. Umakanthan's check-off conclusions. (See JS at 4-6.)  The time line of these notes ranges from October 27, 2005, when an Adult Intake Assessment was completed by the Los Angeles County Department of Mental Health (AR 172-177), to November 24, 2008, when Dr. Umakanthan completed another progress note. (AR 412.)  In between, there are treatment and progress notes from July 9, 2008 (AR 422-426); August 1, 2008 (AR 420-421); August 22, 2008 (AR 418); August 28, 2008 (AR 417); September 19, 2008 (AR 416); October 9, 2008 (AR 415); and October 31, 2008 (AR 413). The Commissioner acknowledges the existence of these progress notes, but vigorously argues that they do not support Dr. Umakanthan's functional assessments.  Certainly, these treatment and progress notes do not contain specific mental functional assessments, as Dr. Umakanthan provided in his check-off form.  Nevertheless, they do provide relevant evaluations which may provide evidentiary support for Dr. Umakanthan's assessments.  If the ALJ had reviewed them, and discussed them in the Decision, the Court might have some basis to evaluate the correctness of the ALJ's rejection of Dr. Umakanthan's check-off form.  Simply stating, as he did, that the check-off form is "entirely conclusory and without basis or support in the record," provides no basis for adequate judicial review.  Simply put, and in

view of the fact that Dr. Umakanthan's report does appear to be at odds with the conclusions reached by Dr. Yang in his complete psychiatric evaluation,[2] the ALJ's rejection of Dr. Umakanthan's conclusions is not supported by the requisite specific and legitimate reasons.[3]

The Commissioner spends significant time arguing that the ALJ was not required to discuss all of these treatment and progress notes, an argument which the Court rejects as unavailing in view of the fact that the progress notes are clearly relevant evidence, as the Commissioner appears to concede later in his argument. Indeed, these progress notes are clearly the type of classic probative evidence that should and must be examined in this type of case. See <u>Vincent ex. rel. Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The failure to examine probative evidence can never be viewed as harmless. In any event, the Commissioner's contention that the progress notes do not support Dr. Umakanthan's functional conclusions as set forth in the check-off form is not persuasive. It would certainly appear that there is significant evidence of serious mental health issues contained in these progress and treatment notes which may well support Dr. Umakanthan's conclusions. Further, and in addition to the fact

_____

[2]    It should be noted, however, that Dr. Yang completed his examination almost three years before Dr. Umakanthan's check-off form was completed.

[3]    Here, the Commissioner, in the JS, inserts an argument that the well-established standards of the Ninth Circuit for evaluation of opinions of treating, examining, and non-examining physicians exceed the requirements set forth by Congress and "would appear to be improper." The Commissioner's apparent suggestion to the Court that it should ignore the dictates of the Ninth Circuit, which the Commissioner has never succeeded in overturning in the Supreme Court (if indeed, such an attempt has been made), is rejected in its entirety.

that Dr. Yang's evaluation appears to be somewhat stale, having been completed on January 18, 2006, the Court notes that Dr. Yang did not review any medical or psychiatric records, did not perform any testing, and instead seems to have relied upon a brief mental status evaluation in reaching his conclusions. All in all, this makes the validity of those conclusions somewhat suspect.

For the foregoing reasons, the Court determines that the ALJ's rejection of Dr. Umakanthan's opinion is not supported by proper legal standards, and merits remand for further hearing consistent with this decision.

The Court will only briefly discuss Plaintiff's second issue, which questions whether the ALJ properly considered the lay witness testimony of Plaintiff's mother, Ruby Samaniego. Ms. Samaniego testified at the hearing before the ALJ (41-43), and also completed a Function Report - Adult - Third Party. (AR 99-106.) Plaintiff summarized Ms. Samaniego's statements and comments in the JS, and certainly, many of them are relevant to an evaluation of Plaintiff's mental health, and to an assessment of her mental functional abilities. Nevertheless, the ALJ failed to discuss this testimony in his decision, a fact which the Commissioner concedes, but argues constitutes harmless error. The Court rejects that contention, and finds that the ALJ's failure to address Ms. Samaniego's testimony indeed was error, because the testimony was material, and should have been considered and evaluated in the Decision. See Smolen v. Chater, 80 F.3d 1273, 1288-89 (9th Cir. 1986).

//

//

//

1    This matter will thus be remanded as to each of these issues, and

2    a de novo hearing will be held consistent with this Memorandum

3    Opinion.

4        **IT IS SO ORDERED.**

5

6    DATED: February 17, 2011                    /s/

7                                          VICTOR B. KENTON
                                          UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28